IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHAUN FLECK, | Case No. 3:25-cv-01048-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| DEL-ONE FEDERAL CREDIT UNION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Shaun Fleck ("Fleck"), proceeding as a self-represented litigant and in forma pauperis, filed this lawsuit against Defendant Del-One Federal Credit Union ("Del-One") on June 18, 2025. Fleck asserts claims against Del-One for violations of the civil Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, his constitutional rights to equal protection and due process, and a criminal statute concerning the theft or receipt of stolen mail, *see* 18 U.S.C. § 1708 ("Section 1708").

Del-One now moves under Federal Rules of Civil Procedure ("Rule") 12(b)(2), 12(b)(6), and 12(e) to dismiss Fleck's complaint for lack of personal jurisdiction and failure to state a

PAGE 1 – OPINION AND ORDER

claim upon which relief can be granted, or for a more definite statement. The Court has federal question jurisdiction over Fleck's RICO, FCRA, and constitutional claims under 28 U.S.C. § 1331. For the reasons explained below, the Court grants in part and denies in part Del-One's motion.

## BACKGROUND

Fleck is an Oregon resident who identifies himself as the "founder of a developing" artificial intelligence ("AI") company called MarketPulse AI, LLC ("MarketPulse"). (Compl. at 1, 9-10, ECF No. 1.) Del-One is a federally chartered, not-for-profit credit union that is headquartered and maintains its principal place of business and all its branch offices in Delaware. (*Id.* at 2; Decl. Kellie Rychwalski ("Rychwalski Decl.") ¶ 3, ECF No. 17.) Del-One does not maintain an office, own property, or employ any individuals in Oregon. (Rychwalski Decl. ¶¶ 4-5.)

On February 21, 2018, Fleck, who at the time resided in Frankford, Delaware, elected to trade in a 2015 Kia Forte and finance his purchase of a new 2018 Subaru WRX with a $44,886 loan from a Delaware car dealer, Winner Dover 1387, LLC ("Winner Dover"). (Compl. at 27-28, 107-08; *see also id.* at 32-33, confirming where Fleck resided when he obtained this loan and recognizing that the parties' "dispute centers around an auto loan account"). As part of the transaction, Fleck signed a retail installment contract and security agreement (the "contract"). (*Id.* at 28, 108.)

The contract identified Fleck as the "Buyer," Winner Dover as the "Seller," and Del-One as the "Assignee," and provided that Winner Dover intended to (and did) assign the contract to Del-One and the vehicle that Fleck purchased served as collateral. (*Id.* at 27-28, 107-08; *see also id.* at 75-76, 81-83, providing a summary of Fleck's Del-One installment account and payment history). The contract also provided that following its assignment, Winner Dover's rights and

PAGE 2 – OPINION AND ORDER

benefits under the contract "belong[ed] to" and were "enforceable by" Del-One. (*Id.* at 28, 108) (simplified).

Fleck timely paid his monthly installment payments until late 2021, when he became delinquent on his loan. (*See id.* at 74, 82, identifying the date of Fleck's first delinquency as October 7, 2021). Fleck remained delinquent on his payments through the end of the 2021 calendar year and Del-One "charged off" Fleck's remaining balance of $31,550 in January 2022.[1] (*Id.* at 75-76, 82.)

On May 17, 2022, Del-One filed a complaint against Fleck in Delaware Superior Court, invoking the contract's terms and seeking to recover Fleck's outstanding balance of "$31,549.73 as of January 10, 2022," along with "interest at the rate of 7.35% from January 10, 2022 until paid[.]"[2] (Def.'s Mot. Dismiss & Alt. Mot. More Definite Statement Ex. A ("Def.'s Ex.") at 1-3, ECF No. 17-1.) Del-One's process server subsequently attempted to locate and effect service of

---

[1] "To 'charge off' a loan is to 'treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt.'" *McWhorter v. Experian Servs. Corp.*, No. 23-13427, 2025 WL 2604621, at *3 n.3 (11th Cir. Sept. 9, 2025) (first quoting *Charge Off*, *Black's Law Dictionary* (12th ed. 2024); and then citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010)). Notably, "the charged off debt is not forgiven." *LeBlanc*, 601 F.3d at 1188 n.5.

[2] Del-One asks the Court to take judicial notice of court records from the lawsuit that it filed against Fleck in Delaware Superior Court. (*See* Def.'s Mot. Dismiss & Alt. Mot. More Definite Statement ("Def.'s Mot.") at 3 & n.3, ECF No. 16 at 10, listing page one twice and citing Def.'s Mot. Ex. A at 1-3 & Ex. B at 1-2, ECF Nos. 17-1 and 17-2.) The Court grants Del-One's request for judicial notice because the state court records have a direct relation to matters at issue here. *See Bykov v. Rosen*, 703 F. App'x 484, 487 (9th Cir. 2017) (holding that the "district court did not abuse its discretion by taking judicial notice of the Washington State court proceedings"); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (explaining that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (citation omitted); *see also Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, No. 23-55671, 2025 WL 830449, at *1 n.1 (9th Cir. Mar. 17, 2025) (taking "judicial notice of court records from several proceedings in which [the self-represented plaintiff] raised similar claims").

PAGE 3 – OPINION AND ORDER

process on Fleck, and in doing so, visited Fleck's mother's home in Coos Bay, Oregon. (Decl. Melissa Dupree Supp. Pl.'s Resp. Def.'s Mot. Dismiss ("Dupree Decl.") at 1, ECF No. 18-2 at 13.) At that point, however, Fleck had "moved for a new job [in] Seaside, Oregon." (*Id.*; Def.'s Ex. B at 2.)

On September 26, 2022, after failing to locate and serve Fleck, Del-One filed a notice of voluntary dismissal in Delaware Superior Court, dismissing its loan-related action against Fleck without prejudice.[3] (Def.'s Ex. B at 2.) Fleck has "maintained continuous possession" of the 2018 WRX that he purchased and pledged as collateral to secure payment under the parties' contract. (Compl. at 6, 14, 115.) According to Fleck, the vehicle is not "currently insured or in use" and he cannot transfer or sell the vehicle because the "title remains with Del-One[.]" (*Id.* at 6, 14.)

More than two years later, on March 18, 2025, Fleck received a letter from American Express advising that it was unable to approve his application for an "American Express Blue Business Cash Card." (*Id.* at 30, 120; *cf. id.* at 76, listing Fleck's Del-One installment account and $31,550 charge off on page fourteen of his February 24, 2025 "Single Bureau Credit Report powered by Equifax"). American Express informed Fleck that it recently obtained and used his Fair Isaac Corporation ("FICO") credit score of 503 in making its "credit decision," and that four "key factors" contributed to Fleck's FICO score: (1) there was a "serious delinquency and derogatory public record or collection agency record on [his] report," (2) the "number of

---

[3] The record reflects that the parties agree that Del-One attempted but failed to locate and serve Fleck in Oregon, and that because Fleck "only learned" of the Delaware lawsuit when Del-One filed its motion in this case, he could not have premised any of his claims for relief on Del-One's previously filed lawsuit or attempt to serve him in Oregon. (*See* Pl.'s Resp. Def.'s Mot. ("Pl.'s Resp.") at 8, 27, ECF No. 18; Def.'s Reply Supp. Mot. Dismiss & Alt. Mot. More Definite Statement ("Def.'s Reply") at 3-6, ECF No. 26, citing Pl.'s Resp. at 8; *see also* Def.'s Mot. at 3.)

PAGE 4 – OPINION AND ORDER

accounts that have or had a delinquency," (3) there were "too few accounts currently paid as agreed," and (4) the "ratio of revolving account balances to their credit limits [was] too high."[4] (*Id.* at 120.)

Fleck believed that American Express denied his application for a business cash card because of Del-One's "derogatory tradeline entries" (i.e., his credit report listed multiple charge-offs related to his $31,550 loan balance) and "unlawful retention of a vehicle lien post charge-off."[5] (*See id.* at 20, 30, 33-34, 67, addressing these issues and complaining that Del-One "continu[ed] to report a charge-off"); *but cf. LeBlanc*, 601 F.3d at 1188 n.5 ("[A] charged off debt is not forgiven.").[6] As a result, on March 20, 2025, Fleck mailed a letter to Del-One. (*See*

_____

[4] FICO scores "predict[] how likely a borrower is to timely make loan payments" and "depend[] on data within an individual's credit report, which is collected by three major agencies—Experian, Equifax, and TransUnion." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 162 n.1 (2d Cir. 2021) (citation omitted). A low score typically means a "higher . . . credit risk." *Id.*

[5] "A tradeline is an account entry on a credit report and, in addition to the name and address of the creditor, typically includes information like the 'account type, opening date of account, credit limit, account status, and payment history.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 341 n.3 (4th Cir. 2017) (quoting *Trans Union Corp. v. FTC*, 245 F.3d 809, 812 (D.C. Cir. 2001)).

[6] Fleck acknowledges that all three major credit reporting agencies have informed him that his records are "accurate" and that there in an "ongoing denial of affiliation" between Del-One and nonparty Swan Valley Credit Union ("Swan Valley"). (Compl. at 70; *see also* Def.'s Mot. at 17, "Del-One is a separate entity wholly unaffiliated with Swan Valley[.]"). Nevertheless, Fleck presents speculative references regarding "dual harm" and "dual-charge-off practices" involving Del-One and Swan Valley, the latter of which appears to be based out of Manitoba, Canada, and previously but apparently no longer reports a charge-off associated with Fleck's installment account and loan balance of $31,550. (*See* Compl. at 67-68, 70-74, 87, 89, 93, 97, 115, stating that Swan Valley's charge-off has "now been silently removed" and "disappeared without explanation" and speculating that Swan Valley, which Fleck's credit reports identified as a "separate entity" from Del-One, may have been "Del-One under a different mask," i.e., Del-One's "potential" "coordinated alias," "third-party rebranding shell or affiliate passthrough," or conduit for "portfolio manipulation"; *but cf. id.* at 77-79, "[As reflected in this May 14, 2025 report, Experian's] reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed,

PAGE 5 – OPINION AND ORDER

*id.* at 19-20, 24, dating the letter March 21, 2025, but referencing a "March 20, 2025" letter and appearing to provide a screenshot of the letter and a U.S. Postal Service receipt dated March 20, 2025).

In his letter, Fleck demanded, among other things, Del-One's "full validation" of the "alleged auto loan account," which was "associated with [his] name" and social security number and Del-One continued to report as "charged off" in January 2025, as reflected on his "recent credit report." (*Id.* at 20.) Fleck also demanded that Del-One release his vehicle's title, "remove the lien," and "overnight the title to [his] address," and advised that if Del-One failed timely to comply with his demands, he would consider Del-One's failure a "legal admission" that it "no longer holds a lawful claim over the vehicle and must release the lien immediately." (*Id.* at 20-21.)

On May 14 and May 28, 2025, after requesting and receiving supplemental information from Fleck, Del-One followed up with Fleck regarding its recently completed investigation into his credit dispute. (*Id.* at 105-06; *see also id.* at 26, 30, 42, 48-55, attaching correspondence dated April 2, April 11, April 23, and May 6, 2025). Del-One advised Fleck that it "carefully investigat[ed] the dispute" and found that the "information being reported . . . [was] accurate." (*Id.* at 105-06; *see also id.* at 77-79, noting that in a reinvestigation report dated May 14, 2025,

---

supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary. . . . We reviewed the documentation you provided with your dispute, but determined that it was not sufficient to make the changes or deletions you requested. We then forwarded your documentation to the furnisher of the information, along with a description of your dispute, and asked them to investigate your dispute. If the item you disputed was a public record, we contacted the vendor who collected the information from a public record source and asked them to verify the public record information. The results of our reinvestigation are included here.").

PAGE 6 – OPINION AND ORDER

Experian advised Fleck that information he provided was "not sufficient to make the changes or deletions [that he] requested" and that it only removed from his credit report Del-One's inquiries dated August 29, 2023, December 14, 2023, June 25, 2024, December 11, 2024, and March 27, 2025).

Unsatisfied with the response that he received from Del-One, Fleck filed the present action in the U.S. District Court for the District of Oregon on June 18, 2025. (Compl. at 1-120.) In his five-page form complaint, Fleck asserts claims against Del-One for violation of the civil RICO Act, FCRA, his constitutional rights to equal protection and due process, and Section 1708. (*Id.* at 3; *cf.* Civ. Cover Sheet at 1, ECF No. 1-1, citing the RICO, FCRA, and Section 1708 as the "U.S. Civil Statute[s]" at issue and checking the nature of suit code for "[o]ther [c]ivil [r]ights"). Fleck seeks damages, Del-One's release of his vehicle's title, and "deletion" of the Del-One "tradelines" on his credit report, which the credit reporting agencies and Del-One determined are accurate. (*Id.* at 4; *id.* at 70, "All three bureaus assert 'accurate records' yet refuse to answer legal questions posed or correct longstanding reporting inconsistencies."; *id.* at 79, showing that on May 14, 2025, Experian advised Fleck that it completed its "reinvestigation of the dispute" that he "recently submitted" and found that his information was "not sufficient to make the changes or deletions [that he] requested"; *id.* at 105, noting that in a report dated May 14, 2025, Del-One advised Fleck that it "carefully investigat[ed]" his dispute and "determined the information [that he] reported . . [was] accurate"; *id.* at 106, making same determination on May 28, 2025).

Fleck also attached to his complaint an affidavit related to his personal assets, income, and application to proceed IFP and a notice regarding an "active internal audit" that MarketPulse is "currently undergoing," as well as these documents: (1) a notice about the manner in which he

structured his complaint and extent to which he relied on MarketPulse's AI "systems" in "prepar[ing] and formatting" his documents, and a request to consider his accompanying "evidentiary packet related to [his] ongoing harm and legal injury" and Del-One's allegedly unlawful actions, (2) a case summary and exhibit index, (3) a declaration expanding on his "damages narrative and timeline," (4) a "placeholder" for his anticipated Exhibits A, B, and "K+," and (5) Exhibits C through J, which together amount to approximately 100 single-spaced pages and include copies of credit-related reports that he obtained and correspondence with Del-One. (*See id.*, attaching (1) through (5) to the complaint at pages 6-9, 10-11, 12-13, 14-17, 18, and 19-120).

## LEGAL STANDARDS

### I.    FEDERAL IFP STATUTE

"The federal [IFP] statute, codified at 28 U.S.C. § 1915, allows an indigent litigant to commence a civil . . . action in federal court without paying the administrative costs of proceeding with the lawsuit." *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The IFP statute provides that a "court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("Section 1915(e) applies to all . . . [IFP] complaints, not just those filed by prisoners."). In other words, the IFP statute mandates sua sponte dismissal on these grounds. *See Hebrard v. Nofziger*, 90 F.4th 1000, 1006-07 (9th Cir. 2024) ("[Section] 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.") (simplified); *Chavez v. Robinson*, 817 F.3d 1162, 1167-68 (9th Cir. 2016) ("[Section] 1915 [previously] required courts to dismiss only those cases that were 'frivolous or malicious[,]' . . . [but] the current IFP statute provides

PAGE 8 – OPINION AND ORDER

additional, detailed grounds for dismissal—including mandatory dismissal of any claim that 'seeks monetary relief against a defendant who is immune from such relief.'") (citations omitted).

## II.    PERSONAL JURISDICTION

Rule 12(b) identifies seven enumerated defenses that "a party may assert . . . by motion," including "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)); *see also Cox v. Gritman Med. Ctr.*, No. 24-1947, --- F.4th ---- , 2026 WL 738569, at *3 (9th Cir. Mar. 16, 2026) (noting that a plaintiff may rely on its "pleadings and affidavits" (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008))).

Courts evaluating motions to dismiss for lack of personal jurisdiction must accept "as true all uncontroverted allegations in the complaint and resolve all genuine disputes in the plaintiff's favor." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020)). Courts, however, "may not assume the truth of allegations in a pleading which are contradicted by affidavit[.]" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)); *see also Yamashita*, 62 F.4th at 502 (noting that when faced with "a contradictory affidavit, the 'plaintiff cannot simply rest on the bare allegations of its complaint'" (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011))); *LNS Enters. LLC*, 22 F.4th at 858 (explaining that "[d]eclarations and affidavits are functional equivalents in

PAGE 9 – OPINION AND ORDER

this context" and that the "relevant uncontroverted record" included the defendants' "rebuttals" because the plaintiffs failed to file any "affidavits or declarations in response" (citing 28 U.S.C. § 1746)).

## III.    FAILURE TO STATE A CLAIM

It is well established that the "same substantive rules apply to Rule 12(b)(6) and [Section] 1915(e) dismissals for failure to state a claim." *Hebrard*, 90 F.4th at 1007 (citing *Lopez*, 203 F.3d at 1127-28). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a [plaintiff's] complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.    SELF-REPRESENTED PLAINTIFFS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021), and should treat pro se litigants with "great leniency" in "evaluating [their] compliance with technical rules of civil procedure[.]" *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986); *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (same). The Supreme Court, however, has also recognized that district courts have "no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Thus,

PAGE 10 – OPINION AND ORDER

"there are limits to what a [district] court must do to accommodate a party appearing pro se." *Washington v. Kijakazi*, 72 F.4th 1029, 1040 (9th Cir. 2023) (citing *Pliler*, 542 U.S. at 231)); *see also Atkins v. Montgomery*, No. 20-56007, 2024 WL 3594386, at *2 (9th Cir. July 31, 2024) (explaining that the "magistrate judge was under no obligation to provide additional guidance or instruction to [the plaintiff] on account of his pro se status, [nor was she] required to take into account the amount of time remaining on [his] one-year statute of limitations in requiring a response to her order," or "act as counsel or paralegal to [a] pro se litigant[]" (quoting *Pliler*, 542 U.S. at 231)).

For example, "[a]lthough [courts] construe pro se pleadings liberally, especially in civil rights cases, . . . [they] 'may not supply essential elements of the claim that were not . . . pled[.]'" *Owen v. City of Hemet*, No. 21-55240, 2022 WL 16945887, at *1 (9th Cir. Nov. 15, 2022) (first citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); and then quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)); *Salazar v. Regents of Univ. of Cal.*, 812 F. App'x 410, 412 (9th Cir. 2020) (same); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (recognizing as much and explaining that the relevant county policy was "part of the record before the district court," but the self-represented plaintiff's "complaint made no reference to it and . . . largely repeated the facts that formed the basis of his other claims"). (simplified).

Furthermore, courts are generally not required to sift through a self-represented litigant's allegations and stacks of exhibits or filings to tease out a valid claim. *See Sernas*, 857 F. App'x at 401 (observing that "courts have a duty to read a pro se complaint liberally . . . [but they are] not required to sift through allegations to see what unidentified causes of action a pro se [litigant] may have a claim for"); *Dickens v. Illinois*, 753 F. App'x 390, 392 (7th Cir. 2018) ("[T]he district

court was not required to sift through [the self-represented litigant's] many exhibits to tease out a valid claim."); *see also Orea v. Quality Loan Service Corp.*, 859 F. App'x 799, 801 (9th Cir. 2021) ("The district court did not abuse its discretion in dismissing the [self-represented plaintiffs'] second amended complaint, which spanned more than ninety pages of text and 540 pages of exhibits, for violating [Rule] 8(a). . . . Th[e operative] complaint was so lengthy, rambling, confusing, and disorganized that one cannot determine who is being sued, for what relief, and on what theory.") (simplified).

## DISCUSSION

Del-One moves under Rules 12(b)(2), 12(b)(6), and 12(e) to dismiss Fleck's complaint for lack of personal jurisdiction and failure to state a claim, or for a more definite statement. (Def.'s Mot. at 1, 32.)

## I.     PRELIMINARY ISSUES

The Court begins by addressing the following preliminary issues: (1) Fleck's reliance on legal authorities that he appears to have created with generative AI tools, (2) whether 28 U.S.C. § 1654 ("Section 1654") applies and prevents Fleck from proceeding with certain claims in a representative capacity, (3) Fleck's obligation to provide Del-One with adequate notice of his "claims, including the facts and the legal basis for relief," *see Gibson v. City of Portland*, 165 F.4th 1265, 1290 (9th Cir. 2026) ("[A] fundamental purpose of Rule 8 . . . is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." (citing *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011))); and (4) whether, under the circumstances of this particular case, the Court may reach the merits of a claim without first evaluating whether it has personal jurisdiction over it, and if so, whether any of Fleck's claims suffer from incurable defects.

///

PAGE 12 – OPINION AND ORDER

A.    **Generative AI Tools**

The Court turns first to the authorities that Fleck appears to have created with generative AI tools.

In his response, Fleck suggests that Del-One's counsel has engaged in "misconduct" and violated this district's local rules ("LR") and Rule 11, and that the Court may find it appropriate to impose sanctions under Rule 11(c). (*See* Pl.'s Resp. at 28-31, describing a "clarification" on Rule 11(b) and Fleck's "procedural preservation for sanctions," "not . . . a formal sanction request at this time," and subsequently requesting a Rule 11(b) finding that Del-One's motion to dismiss "misrepresented jurisdictional law" and "falsely certified compliance with procedural requirements"). In support of his positions, Fleck argues that Del-One's counsel violated (1) LR 7-1(a), which, according to Fleck's quote, provides that "[t]he parties must confer in good faith to resolve the dispute and must certify to the court that the parties made such efforts," and (2) LR 83-4(b), which, according to Fleck's quote, provides that "[a]n attorney not admitted to practice in the District of Oregon may not practice in this Court or appear on behalf of any party, unless the attorney is admitted pro hac vice by the Court." (*Id.* at 30) (simplified); *but cf.* LR 7-1(a)(1) ("Except for motions for temporary restraining orders, the first paragraph of every motion must certify that: (A) In compliance with this Rule, the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so; or (B) The opposing party willfully refused to confer; or (C) The moving party or opposing party is a prisoner not represented by counsel."); LR 83-4(b) (addressing "Special Admissions [for] Government Attorneys" in this district and providing that any "[a]ttorneys specially admitted under this section must be active members in good standing in a state, territorial, or tribal bar").

Considering that Fleck's quotes are wrong and that Fleck previously acknowledged that he "prepared and formatted" his pleading and exhibits with the "support" of his company's AI

PAGE 13 – OPINION AND ORDER

"systems" (Compl. at 10), the Court assumes that Fleck used such "systems" when he prepared his response. (*See* Def.'s Reply at 2, 12-13, same). Fleck's implicit invitation to make "findings" that "mirror[]" a hallucinated case from the Southern District of New York—which does not appear to exist, let alone include the quoted finding that Fleck attributes to it—only lends further support to the Court's assumption as to what occurred here. (*See* Pl.'s Resp. at 4, 19-20, citing and quoting "*FutureGrowth Corp. v. SEC*, 955 F. Supp. 3d 441 (S.D.N.Y. 2025)"; *see also* Def.'s Reply at 13, representing that Del-One was similarly unable to locate this case and source of Fleck's quote).

The Court confirmed that Fleck's citation "does not generate a case" and the only source on Westlaw that includes the quote that Fleck attributes to the non-existent case is Fleck's response in this case. *Cf. Whiting v. City of Athens*, No. 24-5918, --- F.4th ---- , 2026 WL 710568, at *1, *3, *10-13 (6th Cir. Mar. 13, 2026) (sanctioning lawyers for submitting briefing that "cited non-existent cases[] and cited cases for propositions of law that they did not even discuss, much less support," explaining that the "appeal [was] frivolous as argued because [the lawyers] submitted fake cases, and inventing case law is a misrepresentation of law," and providing examples that the Sixth Circuit was unable to locate, citations that did "not generate a case," and an instance in which the "only source on Westlaw" was a lawyer's "briefing in th[e] case"). It is also important to consider "when AI is used to prepare a brief, 'AI hallucinations are more likely to occur when there are little to no existing authorities available that clearly satisfy the user's request—such as, for example, when a [litigant] asks a generative AI tool to supply a citation for an unsupported principle of law.'" *Id.* at *3 n.2 (quoting *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 911 (Cal. Ct. App. 2025)); *cf. Doiban v. Or. Liquor & Cannabis Comm'n*, 347 Or. App. 742, 746, 751 (Or. Ct. App. Mar. 18, 2026) (imposing a $10,000 sanction and noting

that counsel conceded that his staff found "limited cases on point" and "turned to search engines such as Google and Safari and started searching . . . about the particular subject matter of the case, which led to what appeared to be legitimate legal analysis" and that "if one ask[ed] Google's search engine whether many of [his] fabricated cases [were] real, it [would] generate a response using its [AI] search engine, [falsely] affirming that the fabricated case are in fact real").

Consistent with these authorities and related observations, the Court reminds Fleck that "[a]t the very least, the duties imposed by Rule 11 require that attorneys [and self-represented parties] read, and thereby confirm the existence and validity of, the legal authorities on which they rely[,] . . . [as there is] no other way to ensure that the arguments made based on those authorities are 'warranted by existing law,' . . . or otherwise 'legally tenable.'" *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (first quoting FED. R. CIV. P. 11(b)(2); and then quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Failing to satisfy these duties and instead "attempt[ing] to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." *Id.* (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). Thus, the Court warns Fleck that failure to comply with procedural and local rules may result in sanctions.

### B.   Self-Representation

The Court next addresses Section 1654 and the extent to which it applies and prevents Fleck from asserting any claims in a representative capacity (i.e., as MarketPulse's managing member and trustee). (*See, e.g.*, Compl. at 8, appearing to sign an attachment to the complaint in such capacities).

///

///

PAGE 15 – OPINION AND ORDER

**1.     Applicable Law**

Section 1654 is known as the "general *pro se* provision[.]" *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007). The provision "codifies" the personal "right to proceed *pro se*" in "all federal courts of the United States." *See Grizzell v. San Elijo Elementary Sch.*, 110 F.4th 1177, 1179-81 (9th Cir. 2024) (addressing Section 1654 and *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)), *cert. denied*, 145 S. Ct. 2701 (2025); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) ("The general rule establishing the right of an individual to represent oneself in all federal courts of the United States is contained in [Section] 1654."); *Stoner*, 502 F.3d at 1126 ("[Section] 1654 provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally[.]'" (quoting 28 U.S.C. § 1654)).

"Section 1654 is intended to provide . . . equal access to [federal] courts by permitting individuals to represent themselves." *Simon*, 546 F.3d at 664. It is well established, however, that "the privilege to represent oneself *pro se* . . . is personal to the litigant and does not extend to other parties or entities." *Id.* (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966)); *see also Stoner*, 502 F.3d at 1126 (noting that Section 1654 "allows [an individual] to prosecute his own actions *in propria persona*, [but] that right is personal to him, and absent some other statutory authorization, [he] has no authority to prosecute an action in federal court on behalf of others than himself"). "Consequently, in an action brought by a *pro se* litigant, the real party in interest must be the person who 'by substantive law has the right to be enforced.'" *Simon*, 546 F.3d at 664 (quoting *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)).

///

///

PAGE 16 – OPINION AND ORDER

### 2.    Analysis

Fleck is the only named plaintiff in this proceeding. (Compl. at 1.) Although Fleck states that he proceeds in his "personal" and "individual capacity," Fleck also suggests that he may be attempting to proceed in his capacity as a "managing member," "trustee," or representative of MarketPulse. (*Id.* at 7, 9, 49.) Fleck, for example, states that MarketPulse is a "private company" that he founded and allegedly suffered from "resource limitations and unresolved legal barriers related to the current filing." (*Id.* at 2; *see also id.* at 15, 30, 34, 37, indicating that Fleck seeks, among other things, more than $500,000 related to MarketPulse's "suppression of business growth" and appearing to attribute such harm to American Express's denial of a business cash card) (simplified).

Section "1654 provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally[.]'" *Stoner*, 502 F.3d at 1126. (quoting 28 U.S.C. § 1654). That means that Fleck may represent himself and seek to vindicate his own rights in federal court, but he lacks the authority to appear on behalf of MarketPulse or any other third party. *See Dastmalchian v. U.S. Dep't of Just.*, 713 F. App'x 603, 604 (9th Cir. 2018) (affirming the dismissal of a self-represented plaintiff's action and holding that a limited liability company ("LLC") was "unrepresented and not properly before the court" (first citing *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam); and then citing *Johns*, 114 F.3d at 876)); *see also High Country Broad. Co.*, 3 F.3d at 1245 ("A corporation may appear in federal court only through licensed counsel. . . . To allow a sole shareholder with interests identical to the corporation's to intervene [in a self-represented capacity following the entry of a default judgment], rather than hire corporate counsel, would eviscerate [S]ection 1654." (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993))); *C.E. Pope Equity Tr.*, 818 F.2d at 697 (explaining that a non-attorney has "no authority to appear as an

PAGE 17 – OPINION AND ORDER

attorney for others than himself") (citation omitted); *SEC v. Ekejija*, No. 23-55364, 2025 WL 303081, at *2 (9th Cir. Jan. 27, 2025) (denying a self-represented plaintiff's motion, which "appear[ed] to be an attempt to represent" an LLC, because "a non-attorney[] may not represent" an LLC).

Parties may not waive the rule requiring artificial entities to appear through licensed counsel:

> [T]he rule that artificial entities must have licensed counsel protects the integrity and functioning of the federal courts[.] *See C.E. Pope Equity Tr.*, 818 F.2d at 698 . . . . Therefore, this [issue] is not one that the parties may waive.
>
> . . . Allowing . . . waive[r] [of the] statutory obligation to proceed through counsel would undermine [Section 1654] . . . and the interests that it protects. *See Johns*, 114 F.3d at 876-77.

*Sundby v. Marquee Funding Grp., Inc.*, No. 21-55504, 2022 WL 4826445, at *1 (9th Cir. Oct. 3, 2022).

Considering that Fleck may plead and conduct only his own case and in his "personal" and "individual capacity" (Compl. at 9, 49), the Court does not consider MarketPulse properly before it. *See Dastmalchian*, 713 F. App'x at 604 ("To the extent that [the self-represented plaintiff] appealed on behalf of . . . [an] LLC, the entity is unrepresented and not properly before the court."). Accordingly, the Court limits its analysis to Fleck's individual claims and arguments related thereto and reminds Fleck that artificial entities may appear in federal court only through licensed counsel. *See Ekejija*, 2025 WL 303081, at *2 (explaining as much to a self-represented litigant).

### C.    Federal Pleading Rules

The next issue to address is whether Fleck's complaint fails to comply with federal pleading rules.

///

PAGE 18 – OPINION AND ORDER

In his five-page form complaint, Fleck invokes this Court's federal question jurisdiction based on Del-One's alleged violations of the civil RICO Act, FCRA, his constitutional rights to equal protection and due process, and Section 1708. (Compl. at 3; *cf.* Civ. Cover Sheet at 1, citing causes of action under the civil RICO Act, FCRA, and Section 1708). In his complaint's "Statement of Claim" section, Fleck offers only a brief and conclusory summary and incorporates by reference 115 single-spaced pages, many of which he "prepared and formatted" with AI tools:

> Defendant refused to respond to certified [credit] disputes, obstructed, mishandled credit reporting in violation of [the] FCRA [and its] continued avoidance or systematic denial and public harm. Additional predicate acts align with civil RICO violations and documented mail interference[. The] full timeline, legal claims, and symbolic audit logic are detail[ed] in attached exhibits, cover letter, [and] damages breakdown.

(Compl. at 4; *cf. id.* at 10, addressing Fleck's reliance on AI; *id.* at 6-9, 11-120, attaching Fleck's other exhibits).

As discussed above, "a fundamental purpose of Rule 8 . . . is to provide defendants with adequate notice of the plaintiff's claims, including the facts and the legal basis for relief." *Gibson*, 165 F.4th at 1290 (citing *Starr*, 652 F.3d at 1212). Relatedly, although a district court has "a duty to read a pro se complaint liberally, [it] . . . is not required to sift through [incorporated attachments] to see what unidentified causes of action a pro se [litigant] may have a claim for." *Sernas*, 857 F. App'x at 401; *see also Dickens*, 753 F. App'x at 392 ("Contrary to [the self-represented plaintiff's] argument, the district court was not required to sift through her many exhibits to tease out a valid claim."); *Orea*, 859 F. App'x at 801 ("The district court did not abuse its discretion in dismissing the [self-represented plaintiffs'] second amended complaint, which spanned more than ninety pages of text and 540 pages of exhibits, for violating [Rule] 8(a). . . . [The plaintiffs' operative] complaint was so lengthy, rambling, confusing, and

PAGE 19 – OPINION AND ORDER

disorganized that one cannot determine who is being sued, for what relief, and on what theory.")

(simplified).

"Rule 1[] dictate[s] that the Federal Rules should 'promote the just, speedy, and inexpensive determination of every action and proceeding.'" *Gibson*, 165 F.4th at 1290 (quoting FED. R. CIV. P. 1). But it is neither "just, speedy, [n]or inexpensive to force opposing parties and courts to separate the wheat from the chaff in a complaint." *Id.*; *see also id.* at 1288 (stating that "[i]ncorporation by reference is permitted by Rule 10(b) and (c), but when it is used indiscriminately, it becomes a shortcut by counsel [or a self-represented litigant] that violates Rule 8").

As Del-One correctly observes, Fleck's attachments include "vague references to a plethora of statutory and common law claims" and consists largely of a "jumbled collection" of documents, many of which Fleck prepared and formatted with his so-called AI "systems." (Def.'s Mot. at 1, 5 n.5, 22-25; Compl. at 10.) For these reasons, Del-One challenges only the claims that Fleck references in his five-page form complaint and civil cover sheets (i.e., the civil RICO Act, FCRA, and Section 1708) and presents an alternative motion for a more definite statement. (*See* Def.'s Mot. at 5 n.5, 12, 25, stating as much and that Del-One is "uncertain at present as to the full scope of [Fleck's] claims" and reserves its right to challenge "unenumerated or unspecified causes of action [that Fleck] assert[s] against it," and moving in the alternative for an amendment that would provide Del-One with "fair notice of [Fleck's] claims" and allow Del-One to "fashion a response").

For his part, Fleck suggests in his response that he agrees with Del-One that his pleading lacks clarity and fails to provide Del-One with all the information necessary to formulate its response. Notably, Fleck devotes a section of his response to his "clarified and fortified

enumeration of legal claims" and "allegations" against Del-One. (Pl.'s Resp. at 21; *see also id.* at 6, 9, stating that Fleck's response "supports, clarifies, and strengthens his claims" and claiming that rather than seeking leave to amend his complaint, Fleck "submits his response to clarify and strengthen the operative filing") ; *cf. Gibson*, 165 F.4th at 1288 (addressing the "main types of shotgun pleadings" and stating that "the problem with shotgun pleadings is that they make it difficult, if not impossible, for the opposing party to formulate a response" (first citing 35A C.J.S. *Federal Civil Procedure* § 310 (2025); then citing 61A Am. Jur. 2d *Pleading* § 159 (2025); and then citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015))).

Cases addressing comparable pleading deficiencies provide useful guidance here. In *Woods v. Health Care Specialty Services*, No. 22-cv-01055, 2022 WL 17419360, at *6 (S.D. Cal. Dec. 5, 2022), the district court dismissed all of the self-represented plaintiff's claims with leave to amend and "cautioned not to simply attach and reference exhibits as a substitute for presenting factual allegations in the body of an amended complaint." *Id.* (first citing *Thomas v. Donovan*, No. 19-cv-02181, 2020 WL 5106663, at *5 (S.D. Cal. Aug. 28, 2020); and then citing *Stewart v. Nevada*, No. 09-cv-01063, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011)). The district court in *Woods* did so because a plaintiff must do more than attach a stack of exhibits to satisfy federal pleading rules:

> "[A] pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." . . . "[A c]ourt will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim[, because a plaintiff] must state a claim, not merely attach exhibits."

*Thomas*, 2020 WL 5106663, at *5 (first quoting *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Texas 2017); and then quoting *Stewart*, 2011 WL 588485, at *2); *see also Acuna v.*

PAGE 21 – OPINION AND ORDER

*Pollard*, No. 21-cv-01910, 2022 WL 184659, at *4 (S.D. Cal. Jan. 20, 2022) (citing these cases and making the same observations); *Evans v. Fidelity Brokerage Servs. LLC*, No. 20-cv-00111, 2020 WL 1958628, at *2 (D. Haw. Apr. 23, 2020) ("[I]t is not [a c]ourt's responsibility to comb through the exhibits attached to a *pro se* complaint in an attempt to discern possible claims for relief." (quoting *Hall v. Shipley*, No. 19-cv-04858, 2019 WL 3718887, at *2 (D. Ariz. Aug. 7, 2019))).

Under the circumstances presented, the Court finds it appropriate to limit its analysis to the claims that Fleck specifically identified in his form complaint and civil cover sheet (i.e., Fleck's claims for violation of the civil RICO Act, FCRA, his constitutional rights to equal protection and due process, and Section 1708). The parties' briefing and case law above support the Court's decision to do so. *See Gibson*, 165 F.4th at 1290 (noting that "from a judicial policy perspective, enforcing a bar against shotgun pleading, but allowing the party to re-plead the complaint, not only provides better notice to opposing parties of the claims against them, but prevents the needless expenditure of finite judicial resources" and that although "Rule 12(e) is an important tool for a *party* to seek clarification," a "district court[] should not be forced to wade through a morass of allegations, trying to determine how the facts might relate to the causes of action").

### D.    Sequencing and Incurable Defects

With all of that in mind, the Court turns to whether, under the circumstances presented in this particular case, the Court may reach the merits of a claim without first resolving whether it has personal jurisdiction over Del-One, and, if so, whether any of Fleck's claims suffer from incurable defects.

///

///

PAGE 22 – OPINION AND ORDER

### 1.    Sequencing

Del-One moves to dismiss Fleck's complaint "with prejudice" for lack of personal jurisdiction and failure to state a claim. (Def.'s Mot. at 1, 15, 20-22; *see also* Def.'s Reply at 2, 14, arguing that "this action warrants dismissal with prejudice for lack of personal jurisdiction over Del-One, [and for] fail[ure] to state a claim against Del-One" and seeking an "order dismissing [Fleck's] claims with prejudice"). However, Del-One also moves to dismiss "[a]ll" of Fleck's claims "without prejudice" for failure to state a claim. (Def.'s Mot. at 12.) Additionally, Del-One states that because Fleck's voluminous and "unintelligible" 120-page filing consists largely of a "jumbled collection" of attachments and "vague references to a plethora of statutory and common law claims," Del-One is "uncertain at present as to the full scope" of Fleck's claims and, therefore, reserves it right to challenge any "unenumerated or unspecified causes of action [that Fleck] assert[s] against it." (*Id.* at 1, 5 n.5, 12, 22-25; *cf.* Pl.'s Resp. at 6, 9, 21, suggesting that Fleck agrees with Del-One that his complaint lacks sufficient clarity).

Del-One's arguments necessitate the Court's consideration of several matters related to the relief that Del-One seeks and whether the Court may reach the merits of any of Fleck's claims.

As an initial matter, a court's "dismissal for lack of personal jurisdiction does not adjudicate the merits and so should be without prejudice." *Cox v. CoinMarketCap OPCO, LLC,* 112 F.4th 822, 836 (9th Cir. 2024) (holding that "[t]he district court erred . . . in dismissing the case against the foreign defendants with prejudice" (first citing *Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985); then citing *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539 (9th Cir. 1983); and then citing *Thomas v. Furness Pac. Ltd.*, 171 F.2d 434, 435 (9th Cir. 1948))). By contrast, "[a] ruling under Rule 12(b)(6) concerns the merits." *Brownback v. King,* 592 U.S. 209, 216-17 (2021) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006)). It is well

PAGE 23 – OPINION AND ORDER

established that "[t]o trigge[r] the doctrine of res judicata or claim preclusion a judgment must be on the merits." *Id.* at 215 (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502 (2001)).

As a leading treatise recognizes, however, the Ninth Circuit and sister circuits have held that a court may decline to address personal jurisdiction when the defendant raises a personal jurisdiction challenge but is clearly entitled to a favorable resolution on the merits of the claim:

> [W]hen the jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided in favor of the party challenging jurisdiction, thereby obviating any need to decide the question; that approach is possible even when the jurisdictional issue lacks complexity.

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.6 (4th ed. Sept. 2025 update) (simplified) (citing *Lee v. City of Beaumont*, 12 F.3d 933, 937-38 (9th Cir. 1993), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1091-97 (9th Cir. 2008))); *see also Lee,* 12 F.3d at 937-38 ("[T]he district court did not err by assuming it had personal jurisdiction over [the defendant] in order to reach and dismiss the federal claims asserted against [it]. A [district] court may assume the existence of personal jurisdiction and adjudicate the merits in favor of the defendant without making a definitive ruling on jurisdiction. . . . In previous cases, this [circuit] has assumed jurisdiction in order to reach the merits of the case and rule in favor of the defendant. . . . Although the jurisdictional question in this case is not complex or difficult, the district court did not err by dismissing the federal claims and remanding pendent state claims without an express finding of personal jurisdiction.") (citations omitted); *Sameena Inc. v. U.S. Air Force*, 147 F.3d 1148, 1152 n.1 (9th Cir. 1998) (explaining that because the Ninth Circuit "affirm[ed] the district court's dismissal of the [plaintiff's] conspiracy claims against the individual defendants, [it] need not decide whether the

PAGE 24 – OPINION AND ORDER

district court had personal jurisdiction over the individual defendant" (citing *Lee*, 12 F.3d at 937)).[7]

In a more recently published decision, the Ninth Circuit "strongly question[ed] the vitality" of such a sequencing rule but did not disturb its previous decisions announcing or applying it:

> We . . . need not decide whether to adopt a general rule for *all* judgments resting on alternative grounds where one alternative is not "on the merits." Here, the court's non-merits ruling was for lack of personal jurisdiction, depriving the court of the authority to rule on the merits. . . . We therefore hold . . . that res judicata does not apply to a judgment that rests on both a lack of jurisdiction and a merits determination.

---

[7] Personal jurisdiction is a defense that parties may waive, and courts are not required to consider sua sponte. *See Pakootas v. Teck Cominco Metals*, 452 F.3d 1066, 1076 (9th Cir. 2006) (concluding that because the defendant did not appeal the district court's determination that "there was personal jurisdiction" and "a party can waive personal jurisdiction," the Ninth Circuit was "not required to consider it *sua sponte*" (citing *Smith v. Idaho*, 392 F.3d 350, 355 n.3 (9th Cir. 2004))); *Smith*, 392 F.3d at 355 n.3 (discussing the "longstanding rule that personal jurisdiction, in the traditional sense, can be waived and need not be addressed *sua sponte*"); FED. R. CIV. P. 12(h)(1) (addressing a party's ability to waive its defenses under Rules 12(b)(2) to 12(b)(5)). In fact, parties may expressly or implicitly waive a personal jurisdiction defense on appeal or at subsequent stages of litigation before the district court. *See Coffey v. Mesa Airlines, Inc.*, 812 F. App'x 657, 658 & n.1 (9th Cir. 2020) (observing that the plaintiff "expressly waived . . . on appeal" the issue of whether the district court "lacked general personal jurisdiction" and in turn addressing only "specific personal jurisdiction"); *Boston Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 536 (9th Cir. 2007) ("The requirement that a court have personal jurisdiction is an individual right that may be waived either explicitly or implicitly." (citing *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-05 (1982))); *compare Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir.1998) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation."), *and InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 901 (9th Cir. 2018) (explaining that "*Peterson* did not find fault with a party's vigorous litigation of its other claims or defenses in conjunction with or after litigating a timely asserted personal jurisdiction defense to an adverse decision by the district court"; rather, the cases that *Peterson* "cited . . . , suggesting waiver of an asserted personal jurisdiction defense, involved circumstances . . . where the defense was listed in the answer but never affirmatively litigated . . . [, and] where the district court invited discovery on the jurisdictional issue and a renewed motion to dismiss if evidence supported a lack of personal jurisdiction, but the defendant did not avail himself of the opportunity") (simplified).

PAGE 25 – OPINION AND ORDER

We acknowledge that we have held that a "district court may decide that a complaint fails to state a claim even when it does not have personal jurisdiction." *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 990 n.6 (9th Cir. 2012); *see also Wages v. IRS*, 915 F.2d 1230, 1233-35 (9th Cir. 1990) (announcing the rule). We strongly question the vitality of that rule in light of post-*Wages* Supreme Court jurisprudence. *See, e.g.*, [*Sinochem*, 549 U.S. at 430-31] ("*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction). *See id.* at 93-102. 'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case. *Id.* at 94."). In any event, whatever discretion a district court may have to *announce* decisions pursuant to the *Wages* rule, it is a separate matter to *give res judicata effect* to judgments pronounced without personal jurisdiction. Even assuming that the district court properly opined on the merits in 2012, its judgment on the merits had no res judicata effect because the court lacked personal jurisdiction.

*Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1165-66 (9th. Cir. 2016).[8]

Despite the Supreme Court's post-*Wages* jurisprudence, courts continue to recognize that in some instances, they retain the discretion to decide that a plaintiff fails to state a claim even though the defendant timely invoked (and preserved) a personal jurisdiction challenge. For example, in *Palomar Health v. American Guarantee & Liability Insurance Co.*, No. 21-56073, 2022 WL 3006356, *1 n.2 (9th Cir. 2022), the Ninth Circuit observed that "[a]lthough the district court declined to rule on whether [the p]laintiff stated a claim against [the individual defendant, it was] not precluded from reaching this question." *Id.* The Ninth Circuit explained that the plaintiff failed to state a claim because the defendant insurance company's policies' exclusions precluded coverage of all of the plaintiff's alleged losses, and as a consequence, the Ninth Circuit

---

[8] In a footnote, the Ninth Circuit added that (1) "[p]ersonal jurisdiction differs from subject matter jurisdiction in some important ways[, e.g.,] a defendant may waive the lack of personal jurisdiction, but the parties may not waive the lack of subject matter jurisdiction," (2) "where the lack of personal jurisdiction is not waived, those differences are immaterial for the purpose of res judicata," and (3) "[t]he Supreme Court has made no distinction between the two types of jurisdiction when considering the effect of a judgment." *Ruiz*, 824 F.3d at 1166 n.4 (simplified).

PAGE 26 – OPINION AND ORDER

did not "need [to] review the district court's conclusions concerning personal jurisdiction" over the individual defendant because the plaintiff "also fail[ed] to state a claim against [him.]" *Id.* at *1 & n.2.

Similarly, in *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 95 nn.8-9 (2d Cir. 2022), *cert. denied*, 144 S. Ct. 192 (2023), the Second Circuit declined to "reach . . . issues in [two defendants'] cross-appeal—which concern[ed] whether the district court properly found that they forfeited or waived their personal jurisdiction arguments—because [it] affirm[ed] the district court's dismissal orders on the merits." *Id.* at 95 n.8. The Second Circuit also declined to reach whether the "district court erred by dismissing several [other] defendants for lack of personal jurisdiction" because its "decision on the merits provide[d] an alternative ground for affirmance." *Id.* at 95 n.9 (citation omitted) (citing 4 Charles Alan Wright et al., *supra* at 24, § 1067.6).

More than a decade earlier, in *RSM Production Corp. v. Fridman*, 387 F. App'x 72, 75 n.3 (2d Cir. 2010), the Second Circuit held that "[b]ecause [it] dismiss[ed] the claim on the merits as [the relevant defendant] urge[d] . . . , [it] need not discuss whether . . . the district court lacked personal jurisdiction over [the defendant]." *Id.* (first citing *In re DES Litig.*, 7 F.3d 20, 24 (2d Cir. 1993); and then quoting 4 Charles Alan Wright et al., *supra* at 24, § 1067.6). Decisions from other circuits are in accord. *See Roberts v. Jack L. Marcus Co.*, No. 21-2241, 2022 WL 1535264, at *2 (7th Cir. May 16, 2022) (declining to resolve "doubts" about "personal jurisdiction" because the "complaint appended to [the self-represented litigant's] appellate brief still [did] not state a plausible claim for relief against any specific Maryland defendant") (citations omitted); *Siegler v. Sorrento Therapeutics, Inc.*, No. 2020-1435, 2021 WL 3046590, at *9, *11 (Fed. Cir. July 20, 2021) (noting that the self-represented plaintiff's complaints included no allegations of

government (as opposed to private) action, declining to "reach the issue of whether the district court had personal jurisdiction over [a defendant medical center]," rejecting that the "district court erred in dismissing the . . . [c]omplaints against all defendants (including [the medical center])," and thus finding it "unnecessary to further review whether [the plaintiff's] claims against [the medical center] would have been properly dismissed for a lack of personal jurisdiction").

The authorities above demonstrate that although Del-One raised (and may waive) its defense for lack of personal jurisdiction, the Court may reach and rule on the merits of Fleck's claims when it is clear that Del-One is entitled to resolution in its favor.[9]

### 2.    Incurable Defects

Fleck asserts multiple claims against Del-One that suffer from fatal and incurable deficiencies.

### a.    Criminal Statute

Fleck appears to assert a claim against Del-One for "mail interference" in violation of Section 1708. (*See* Compl. at 3 & Civ. Cover Sheet at 1, citing Section 1708 as one of the "U.S. Civil Statute[s] under which [Fleck is] filing" and alleging "interference [with] certified mail"; *see also* Compl. at 4, reflecting that Fleck also refers to Section 1708 as a RICO "predicate act[]").

///

---

[9] At least one district court has determined that the defendants implicitly consented to its personal jurisdiction under comparable circumstances. *See Sanders v. Univ. of Tex. Pan Am.*, No. 7:17-cv-00446, 2018 WL 11469733, at *3 n.34 (S.D. Tex. Jan. 3, 2018) (holding that the "[d]efendants implicitly consent to personal jurisdiction by requesting dismissal with prejudice of all [the p]laintiff's claims"), *aff'd on other grounds*, 776 F. App'x 835, 836-39 (5th Cir. 2019) (per curiam).

Section 1708 is a criminal statute. *See* 18 U.S.C. § 1708 (bearing the title "[t]heft or receipt of stolen mail matter generally" and providing that violation of its terms results in a "fine[] . . . or imprisoned not more than five years, or both"); *McFarlane v. Roberta*, 891 F. Supp. 2d 275, 285 (D. Conn. 2012) ("[The self-represented plaintiff] added a claim against [the defendant] for violation of [Section 1708] . . . for stealing and tampering with her mail. This provision, however, is a criminal statute[.]"). Fleck may not rely on Section 1708 as a basis for invoking this Court's federal question jurisdiction. *See Weishampel v. Circle of Child.*, No. 6:18-cv-00429-AA, 2019 WL 4544269, at *1 (D. Or. Sept. 19, 2019) (explaining that although the self-represented plaintiff cited "multiple federal statutes as bases for federal question jurisdiction," most of the statutes that the plaintiff cited, including Section 1708, were "criminal statutes that allow the United States government to prosecute individuals for committing criminal acts").

Fleck also lacks the ability to enforce or bring any claim or seek Del-One's criminal prosecution under Section 1708. *See Fisher v. Higgins*, No. 23-5201, 2024 WL 4850944, at *1 (D.C. Cir. Nov. 21, 2024) (per curiam) (affirming dismissal of the self-represented plaintiff's "case prior to service of process" because he "lack[ed] standing to seek the criminal prosecution of appellees" and failed to demonstrate that Section "1654, which authorizes litigation either pro se or by counsel, provides a private cause of action to enforce criminal statutes" (simplified) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))); *Rasheen v. Adner*, 356 F. Supp. 3d 222, 244 (N.D.N.Y. 2019) ("[The self-represented plaintiff] attempts to bring criminal charges against [the] defendants pursuant [to Sections 1708 and 1709,] . . . [which must be dismissed with prejudice. 'The law is well settled that no private citizen has a constitutional right to bring a criminal complaint against another individual.'" (quoting *DePonceau v. Bush*, No. 04-cv-06240,

2004 WL 1574621, at *3 (W.D.N.Y. June 4, 2004))); *Weishampel*, 2019 WL 4544269, at *1 (same).

Further, Fleck lacks the ability to rely on Section 1708 as a RICO predicate. *See Danping Li v. Gelormino*, No. 18-cv-00442, 2019 WL 1957539, at *5 (D. Conn. May 2, 2019) ("[Section 1708] does not provide a private cause of action and is not an enumerated RICO predicate" (citing *Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-cv-00463, 2017 WL 1051001, at *15 (D.N.H. Mar. 20, 2017))); *Lath*, 2017 WL 1051001, at *15 ("[Section 1708 of] the federal criminal code makes it unlawful to . . . steal mail . . . and . . . receive or possess stolen mail . . . [but] those crimes do not qualify as racketeering activity for purposes of the RICO statute.").

For these reasons, the Court grants Del-One's motion to dismiss Fleck's Section 1708 claim with prejudice (*see* Def.'s Mot. at 20, 22, 25, arguing that "no amendment can cure" Fleck's "mail interference claim" and leave to amend is "not in the judicial interests of this Court"), because it fails as a matter of law. *See McFarlane*, 891 F. Supp. 2d at 285, 289 (noting that Congress did not appear to "intend[] to create a private, civil cause of action based on [Section 1708's] violation" and dismissing and declining to "permit any repleading" of the self-represented plaintiff's Section 1708 claim as it "fail[ed] as a matter of law") (citations omitted).

### b.    Constitutional Claims

Fleck alleges that Del-One violated his constitutional rights to equal protection and due process. (Compl. at 3; *see also* Civ. Cover Sheet at 1, checking the nature of the suit code for other civil rights).

The Court construes Fleck's constitutional claims as arising under 42 U.S.C. § 1983 or under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See, e.g., Staley v. Nacy Fed. Credit Union*, No. 24-cv-08265, 2025 WL 3074341, at *3 (S.D.N.Y. Nov. 3, 2025) (doing the

PAGE 30 – OPINION AND ORDER

same under similar circumstances). "To state a claim under [Section] 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 675-76 (describing *Bivens* as the "federal analog to plaintiffs' suits against state officials" under Section 1983) (simplified). "Private parties therefore generally are not liable under [Section 1983]." *Staley*, 2025 WL 3074341, at *3 (citations omitted).

The Ninth Circuit has observed that "[a]lthough the federal government regulates credit unions, regulation alone is not enough to make a private entity and a government agency interdependent." *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1132 (9th Cir. 1994) (citation omitted). The Ninth Circuit has "therefore conclude[d] that 'the slight degree of government involvement in the business of federal credit unions does not warrant applying Constitutional requirements to these democratically controlled, non-profit cooperatives." *Id.* Consistent with this understanding, courts have held that federal credit unions are not "state or federal actor[s] for purposes of liability under Section 1983 or *Bivens*." *Staley*, 2025 WL 3074341, at *4 (first citing *Anderson v. Wiggins*, 460 F. Supp. 2d 1, 7 (D.D.C. 2006); then citing *Menard v. First Source Fed. Credit Union*, No. 22-cv-00038, 2022 WL 226763, at *3 (N.D.N.Y. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 446434, at *1 (N.D.N.Y. Feb. 14, 2022); then citing *Pierre v. Melrose Credit Union*, No. 17-cv-02799, 2018 WL 3057686, at *5 (E.D.N.Y. June 19, 2018); then citing *Darden v. TransUnion LLC*, No. 23-cv-04771, 2023 WL 8785253, at *4 (N.D. Ga. Oct. 26, 2023), *report and recommendation adopted*, 2024 WL 857759, at *1 (N.D. Ga. Jan. 5, 2024); and then citing *Fiorani v. Navy Fed. Credit Union*, No. 15-cv-00291, 2015 WL

11112156, at *2 (E.D. Va. Apr. 14, 2015), *aff'd*, 613 F. App'x 220, 220 (4th Cir. 2015) (per curiam); *see also Allen v. Founders Fed. Credit Union*, No. 17-cv-01964, 2018 WL 835931, at *2-3 (D.S.C. Jan. 31, 2018) (noting that "numerous courts have held that federal credit unions are private actors" and collecting cases in support of dismissing *Bivens* and Section 1983 claims against federal credit unions) (simplified), *report and recommendation adopted*, 2018 WL 826680, at *1 (D.S.C. Feb. 12, 2018).

Fleck does not and lacks the ability to allege facts that plausibly suggest that Del-One is a state or federal actor. Thus, Fleck fails to and cannot state claims against Del-One under Section 1983 or *Bivens*. *See Staley*, 2025 WL 3074341, at *4-5 (holding that the self-represented plaintiff's constitutional claims against a federal credit union and "private entity" failed to state a claim and must be dismissed because the plaintiff failed to allege "facts showing that [the federal credit union] acted under state or federal law or that it may be deemed to be a state or federal actor," and entering "judgment dismissing th[e] case"); *Sinai v. Del-One Fed. Credit Union*, No. 25-00153, 2025 WL 1094326, at *2 (D. Del. Apr. 11, 2025) (holding that to the extent the self-represented plaintiff "intend[ed] to raise a federal rights claim" under Section 1983, he failed to "identify a viable defendant" and "only name[d] private actors" and thus "[a]mendment [was] futile").

Consistent with *Staley* and *Sinai* and the Court's ongoing obligation to screen and dismiss sua sponte under the federal IFP statute, *see, e.g.*, *Stephens v. Biden*, No. 3:23-cv-00817, 2024 WL 554274, at *1 (D. Or. Jan. 26, 2024) (noting that initial and amended IFP complaints are subject to screening and sua sponte dismissal), *findings and recommendation adopted*, 2024 WL 665177, at *1 (D. Or. Feb. 15, 2024), the Court dismisses Fleck's constitutional claims against Del-One with prejudice. *See Staley*, 2025 WL 3074341, at *1, *4-5 (reflecting that the self-

PAGE 32 – OPINION AND ORDER

represented plaintiff amended to supplement his race discrimination allegations and the district court dismissed his newly asserted and "clarifie[d]" claims under Section 1983 and *Bivens* with prejudice); *Sinai*, 2025 WL 1094326, at *1-2 (granting the self-represented plaintiff's motion for leave to amend and screening and treating as operative the plaintiff's amended complaint and finding that amendment of the plaintiff's Section 1983 claim was "futile" but dismissing the plaintiff's other claims, which were "outside" the district court's subject matter jurisdiction, "without prejudice" because it "allow[ed him] to bring [those] claims before an appropriate court").

## II.    FCRA AND RICO CLAIMS

Having resolved these preliminary issues, the Court turns to Fleck's remaining claims against Del-One for violation of the civil RICO Act and FCRA. These claims, as currently pled, also fail.

### A.    FCRA

#### 1.    Applicable Law

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). To do so, "[t]he FCRA sets out a series of procedures that dictate how a furnisher must investigate and correct erroneous information." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1106 (9th Cir. 2012). When a credit reporting agency ("CRA") receives notice of a dispute, the "furnisher must investigate and, if necessary, correct the information it report[ed]." *Id.* (citing 15 U.S.C. § 1681s-2(b)).

A furnisher's duties under Section 1681s-2(b) are "triggered only after 'receiving notice pursuant to' [Section] 1681i(a)(2), under which a CRA provides a 'notification' to a furnisher

PAGE 33 – OPINION AND ORDER

which includes 'all relevant information' regarding the dispute." *Id.* Once a furnisher's duties are triggered under Section 1681s-2(b), the FCRA "obligates [it] to prevent future misreporting by modifying, deleting, or blocking the inaccurate item, as appropriate." *Id.* at 1107 (citing 15 U.S.C. § 1681s-2(b)(1)(A), (b)(1)(D), (b)(1)(E)(i)-(iii)). The Ninth Circuit has previously "explained that an item on a credit report can be 'incomplete or inaccurate' within the meaning of the FRCA[] . . . 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Gorman*, 584 F.3d at 1163). Further, Ninth Circuit "precedent suggests that, at the very least, information that is inaccurate 'on its face,' is 'patently incorrect.'" *Drew*, 690 F.3d at 1108 (quoting *Carvalho*, 629 F.3d at 891).

### 2.    Analysis

The Court finds that Fleck's FCRA claim falls well short of satisfying the plausibility standard.

Fleck's FCRA claim against Del-One appears to be premised on his theories that Del-One (1) improperly reported multiple charge-offs of his undisputed loan balance of $31,550, and (2) bears responsibility for an unaffiliated Canadian nonparty's previous reporting of the same charge-off. (*See* Compl. at 4, alleging that Del-One "mishandled credit reporting in violation of [the] FCRA" and seeking "immediate deletion of tradeline[s]," i.e., Del-One's charge-off of Fleck's loan balance; *id.* at 70, acknowledging that there in an "ongoing denial of affiliation" between Del-One and Swan Valley and all three major CRAs informed Fleck that his records are "accurate"; *id.* at 67-68, 70-74, 87, 89, 93, 97, 115, speculating about "dual harm" and "dual-charge-off practices" involving Del-One and Swan Valley, the latter of which appears to be based

out of Manitoba and previously but apparently no longer reports a charge-off of Fleck's loan balance).

With respect to Swan Valley, Fleck advances conclusory and conspiratorial allegations regarding Del-One's "potential" use of Swan Valley as a "different mask," "coordinated alias," and conduit for "portfolio manipulation," and nothing that contradicts his acknowledgment that there is an "ongoing denial of affiliation." (*See id.* at 67-68, 70-74, 87, 89, 93, 97, 115, addressing that the Swan Valley charge-off has "now been silently removed" and "disappeared without explanation" and speculating about whether Swan Valley, which Fleck's credit reports identified as a "separate entity," may have been "Del-One under a different mask," i.e., Del-One's "potential" "coordinated alias," "third-party rebranding shell or affiliate passthrough," or conduit for "portfolio manipulation"). Del-One also continues to maintain and represent to Fleck (and this Court) that it is "unaffiliated with Swan Valley." (*See* Def.'s Mot. at 17, stating that "[a]s a threshold matter, Del-One is a separate entity wholly unaffiliated with Swan Valley"; Def.'s Reply at 2, addressing Fleck's implausible theory that Del-One "conspired with unaffiliated entities").

With respect to Del-One's reporting of multiple charge-offs, the Ninth Circuit and many district courts, including this one, have previously rejected Fleck's theory of FCRA liability. For example, in *Steinmetz v. American Honda Financial Corporation*, 835 F. App'x 199, 201 (9th Cir. 2020), the Ninth Circuit affirmed the district court's dismissal of the plaintiff's car loan-related FRCA claim, explaining that "[t]he report of multiple charge-offs does not support a plausible claim under [the FCRA] because [the plaintiff] failed to plead that anyone would believe that the account had been charged off more than once" and "[i]t is undisputed that an

PAGE 35 – OPINION AND ORDER

account can be charged off only once." *Id.* (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 757 (9th Cir. 2018)).

This Court and others have similarly rejected comparable FCRA theories of liability based on multiple charge-offs:

- *Hickson v. Experian Info. Sols., Inc.*, No. 6:21-cv-00370-AA, 2023 WL 2734795, at *3-4 (D. Or. Mar. 31, 2023) ("Many district courts have rejected [the p]laintiff's argument that reporting recurring charge offs is incorrect or misleading such that it violates the FCRA. . . . The Ninth Circuit has also recently held that 'the report of multiple charge offs does not support a plausible claim under FCRA because the plaintiff failed to plead that anyone would believe that the account had been charged off more than once,' and it was 'undisputed that an account can be charged off only once.' . . . [I]t is unclear how any reader of [the p]laintiff's credit report could be misled into believing that multiple charge offs occurred when it is undisputed that a charge off occurs only once." (simplified) (quoting *Steinmetz*, 835 F. App'x at 201))

- *Mohammed v. Citibank, N.A.*, No. 21-cv-02703, 2023 WL 12193811, at *2 n.1 (N.D. Ill. Mar. 30, 2023) ("To the extent that [the self-represented p]laintiff relies upon multiple charge-offs per account as the basis of his claim, numerous district courts have found that claims for 'multiple charge-offs' corresponding to a single underlying debt do not plausibly state a claim under the FCRA. . . . If by 'charge-off,' [the p]laintiff means the accounting term for the treatment of debt as a loss or expense because

PAGE 36 – OPINION AND ORDER

payment is unlikely, . . . a charge-off does not discharge the debtor's payment obligation and can be reported on a continuing basis. . . . [The p]laintiff should consider these cases carefully in deciding whether he has a good-faith basis to amend his complaint further.") (simplified);

- *Otto v. TransUnion, LLC*, No. 6:21-cv-00379-AA, 2022 WL 787940, at *3 (D. Or. Mar. 15, 2022) ("District courts have routinely rejected [the theory] that reporting recurring charge offs is incorrect or misleading such that it violates the FCRA. . . . The Ninth Circuit has also recently [determined] that the report of multiple charge-offs does not support a plausible claim under the FCRA[.] . . . [T]he [c]ourt joins the growing consensus and concludes that repeatedly reporting a delinquent account as charged off is not inaccurate withing the meaning of the FCRA. . . . [A] charged off debt is treated as a loss for purposes of accounting, the debt is not forgiven and creditors can still pursue it.") (simplified);

- *Hayes v. Experian Info. Sols, Inc.*, No. 3:21-cv-00129-MO, 2021 WL 5989064, at *2-3 (D. Or. Dec. 17, 2021) (agreeing with the court's "colleagues' core finding [in *Kelly* and *Makela*] that reporting multiple months of charge-offs is not misleading under FCRA" and granting the defendant's motion to dismiss it "from th[e] case" because "no allegation of injury could be sufficient");

- *McKay v. Experian Info. Sols., Inc.*, No. 6:21-cv-00371-MK, 2021 WL 9348812, at *2-4 (D. Or. Nov. 16, 2021) (holding that the plaintiff's multiple charge-off theory "fail[ed] for multiple reasons" and noting that

*Steinmetz* and district court decisions supported dismissal and that "certain financial institutions . . . have legal obligations to report 'charged off' debts") (simplified), *findings and recommendation adopted*, 2022 WL 3683766, at *1 (D. Or. Aug. 25, 2022);

- *Makela v. Experian Info. Sols., Inc.*, No. 21-cv-00386-MC, 2021 WL 5149699, *3-4 (D. Or. Nov. 4, 2021) ("Several district courts have rejected Plaintiff's argument that reporting recurring charge offs is incorrect or misleading such that it violates the FCRA. . . . [I]t is unclear how any reader of [the p]laintiff's credit report could be misled into believing that multiple charge offs occurred when it is undisputed that a charge off occurs only once.");

- *Kelly v. Experian Info. Sols., Inc.*, No. 21-cv-00242-SB, 2021 WL 7186817, *3 (D. Or. Nov. 2, 2021) ("Consistent with the Ninth Circuit's *Steinmetz* opinion affirming the dismissal of a nearly identical FCRA claim, the district judge should dismiss [the plaintiff's] FCRA claim against [the defendant]."), *findings and recommendation adopted*, 2022 WL 278777, at *1-2 (D. Or. Jan. 31, 2022).

Based on these authorities and observations, the Court finds that Fleck's FCRA claim clearly fails. Thus, the Court grants Del-One's motion to dismiss Fleck's FRCA claim to the extent it is based on Del-One's continued reporting of charge offs and Fleck's conclusory allegations of a conspiracy with Swan Valley. *See Sustrik v. Equifax Info. Servs., LLC*, 812 F. App'x 727, 728 (9th Cir. 2020) (explaining that the Ninth Circuit has "confirmed that 'the FCRA's reinvestigation provision . . . require[s] that an actual inaccuracy exist for a plaintiff to

PAGE 38 – OPINION AND ORDER

state a claim'" and therefore under its "precedent, [a] district court . . . [does] not err in holding that [a] suit fail[s when] . . . the information in the [p]laintiffs' files [is] accurate" (quoting *Carvalho*, 629 F.3d at 891)).

### B.    RICO

Fleck has also failed to state a claim against Del-One under the civil RICO Act.

### 1.    Applicable Law

The civil RICO Act provides that "it is 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (quoting 18 U.S.C. § 1962(c)). The Ninth Circuit has explained that "[t]o state a claim under [Section] 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc)). The Ninth Circuit has also explained that "[a] 'pattern requires at least two acts of racketeering activity[,]' . . . [and that] '[r]acketeering activity is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice.'" *Id.* (first quoting 18 U.S.C. § 1961(5); and then quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)).

Relatedly, Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* at 559 (quoting 18 U.S.C. § 1962(d)). In other words, a plaintiff "cannot claim that a conspiracy to violate RICO existed if [he fails] adequately [to] plead a substantive violation of RICO." *Id.* (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). For that reason, Plaintiff's Section 1962(d) claim

PAGE 39 – OPINION AND ORDER

rises or falls with his Section 1962(c) claim. *See id.* ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved. Denial of leave to amend the complaint to add this claim was therefore proper.").

### 2. Analysis

The Court concludes that Fleck fails to allege facts sufficient to state a plausible claim under the civil RICO Act because Fleck's RICO allegations are conclusory, conspiratorial, and legally insufficient.

Fleck appears to rely on the following alleged RICO predicates: FCRA violations, mail interference under Section 1708, and mail, wire, and banking fraud. (Pl.'s Resp. at 17.) Fleck's FCRA theory fails for the reasons discussed. Further, Fleck may not rely on and presents only conclusory allegations in support of Section 1708 as a RICO predicate. *See Danping Li*, 2019 WL 1957539, at *5 ("[Section 1708] does not provide a private cause of action and is not an enumerated RICO predicate") (citation omitted); *Lath*, 2017 WL 1051001, at *15 ("[Section 1708] of the federal criminal code makes it unlawful to . . . steal mail . . . and . . . receive or possess stolen mail . . . [but] those crimes do not qualify as racketeering activity for purposes of the RICO statute.").

Mail, wire, and banking fraud, on the other hand, are "all fraud crimes," yet Fleck fails to allege "facts sufficient to support a finding of the commission of those crimes—let alone done so under the applicable [Rule 9(b)] heightened pleading standard." *Samuelson v. Jewell Sch. Dist. 8*, 725 F. Supp. 3d 1195, 1220-21 & n.27 (D. Or. 2024); *cf. White v. Anywhere Real Est., Inc.*, No. 23-4378, 2025 WL 1009559, at *1 (9th Cir. Apr. 4, 2025) (affirming the district court's dismissal of the plaintiff's RICO claim because the plaintiff "relie[d] on conclusory statements and vague, outlandish allegations" of mail fraud, which "may be a predicate act under RICO" but not

PAGE 40 – OPINION AND ORDER

without "the who, what, when, where, and how of the misconduct charged") (simplified). Nor has Fleck "alleged any scheme to defraud a financial institution." *Samuelson*, 725 F. Supp. 3d at 1221.

Additionally, the Court finds that Fleck's conclusory, "outlandish," and "rambling" allegations about schemes between Del-One and Swan Valley and the U.S. Postal Service are legally deficient and "fail to identify a 'pattern of racketeering activity,' which requires at least two predicate acts that are 'related' and 'amount to or pose a threat of continued criminal activity." *See White*, 2025 WL 1009559, at *1 (making a similar finding (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989))). Fleck's complaint and attachments reflect that even if Del-One failed timely to receive or never received certain mailings, it still "carefully investigated" and responded multiple times to Fleck's dispute about multiple charge-offs and, like the CRAs, advised Fleck that the reported information was accurate. (*See* Compl. at 70, 77-79, 105-08.)

Finally, Fleck does not dispute that he failed to pay off his $31,550 loan balance. It is unclear how Fleck could plausibly allege that he is entitled to a release of his vehicle's title where he does not dispute he defaulted on his loan.

For these reasons, the Court grants Del-One's motion to dismiss Fleck's claim under the civil RICO Act.

## III.    LEAVE TO AMEND

The remaining issue to address is whether the Court should grant Fleck leave to amend his complaint. (*See* Def.'s Mot. at 1, 15, 20-22, seeking dismissal "with prejudice"; Def.'s Reply at 2, 14, seeking "dismissal with prejudice for lack of personal jurisdiction over Del-One, [and for] fail[ure] to state a claim against Del-One," and requesting an "order dismissing [Fleck's] claims with prejudice").

PAGE 41 – OPINION AND ORDER

According to the Ninth Circuit, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995)). This "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Id.* (quoting *Lopez*, 203 F.3d at 1130); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."); *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) ("We are very cautious in approving a district court's decision to deny pro se litigants leave to amend.").

Like Del-One, this Court is "uncertain" about the scope of Fleck's claims because he "[s]cattered throughout" his 120-page filing a "plethora of statutory and common law" references. (Def.'s Mot. at 5 n.5, 12, 23; *cf.* Compl. at 1-120.) That precludes a determination that Fleck's pleading could not possibly be cured by the allegation of other facts. Thus, the Court grants Fleck leave to amend in accordance with the requirements described below.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Del-One's motion to dismiss or for a more definite statement (ECF No. 16), and GRANTS Fleck leave to amend his complaint subject to these requirements:

(1)     Fleck's amended complaint is due by April 30, 2026,

(2)     Fleck may not attempt to add or join parties, assert claims or seek damages on behalf of anyone other than himself, amend his theories of conspiracies involving Del-One and unaffiliated entities or the U.S. Postal Service, amend his Section 1708 or constitutional claims, or amend his RICO claim

PAGE 42 – OPINION AND ORDER

based on the alleged predicates of multiple charge-offs under the FCRA, mail interference under Section 1708, or mail, wire, or banking fraud,

(3)    Fleck may only amend or clarify factual allegations and legal authorities upon which he relied in his original complaint, not add any new or unrelated claims,

(4)    Fleck's amended complaint must not exceed twenty pages and must comply with the Court's rulings and pleading requirements described herein, *see Todd v. Ellis*, No. 2:13-cv-1016, 2013 WL 3242229, at *2 (E.D. Cal. June 25, 2013) (explaining that because the self-represented plaintiff's complaint violated Rule 8, the plaintiff was "hereby cautioned that the court will not consider any allegations or materials submitted in excess of the [twenty]-page limit" and warning "[f]ailure to abide by these instructions may result" in a "dismiss[al] with prejudice" under Rule 41(b)); and

(5)    Any further hallucinated legal citations will expose Fleck to sanctions.

If Fleck fails to comply with any of these orders or if the Court determines that Fleck's amended claims are frivolous, malicious, or clearly fail to state a claim on which relief may be granted, the Court will screen and dismiss Fleck's claims with prejudice. *See Granados v. Padilla*, No. 21-16198, 2023 WL 5318463, at *1 (9th Cir. Aug. 18, 2023) (affirming dismissal of self-represented plaintiff's claims "because after repeated amendment, [the plaintiff]'s operative complaint failed to comply with Rule 8") (citations omitted); *Zambrano v. Oregon Dep't of Corr.*, No. 3:22-cv-00443-SB, 2025 WL 4228198, at *7 (D. Or. Oct. 27, 2025) (dismissing self-represented plaintiff's claims with prejudice for repeated failures to comply with Rule 8(a)(2))

PAGE 43 – OPINION AND ORDER

(citations omitted), *findings and recommendation adopted*, 2026 WL 383308 (D. Or. Feb. 11, 2026), *appeal docketed*, No. 26-1511 (9th Cir. Mar. 13, 2026).[10]

**IT IS SO ORDERED.**

DATED this 30th day of March, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[10] Given the absence of a ruling on the issue of personal jurisdiction, Del-One may move for reconsideration and request dismissal without prejudice on personal jurisdiction grounds if it prefers to relitigate Fleck's claims anew in a different forum. *See Ruiz*, 824 F.3d at 1163 (holding that "an earlier dismissal on alternative grounds, where one ground is a lack of jurisdiction, is not res judicata").